### W. W. SLY MFG. CO. v. CENTRAL IRON WORKS.

(Circuit Court of Appeals, Seventh Circuit. July 27, 1917. Rehearing Denied August 24, 1917.)

#### No. 2444.

PATENTS ☞328—VALIDITY—PRIOR PUBLIC USE.
   Evidence *held* insufficient to invalidate the Sly patent, No. 703,313, for a barrel closure for tumbling mill doors, on the ground of prior public use for more than two years, under the rule that such proof must be clear and satisfactory, and must convince the court beyond a reasonable doubt.

Appeal from the District Court of the United States for the Southern Division of the Southern District of Illinois.

Suit in equity by the W. W. Sly Manufacturing Company against the Central Iron Works. Decree for defendant, and complainant appeals. Reversed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from decree dismissing appellant's bill for want of equity. Appellant's suit was to sustain two patents, No. 514,097, issued February 6, 1894, and No. 703,313, issued July 24, 1902; the application for this last patent having been filed March 5, 1902. Both patents, if valid, were infringed by appellee. No serious controversy over facts in reference to patent No. 514,097 exists, its validity being conceded, and the sole defense to patent No. 703,313 was invalidity through public use more than two years preceding March 5, 1902. The District Court found patent No. 703,313 invalid because of prior public use. The other patent expired pending the litigation, and although it was in force when the suit was begun, the court refused an accounting, and dismissed the bill as to both patents. The decision of the Circuit Court of Appeals for the Sixth Circuit in a prior suit between the same parties, sustaining patent No. 514,097 (W. W. Sly Mfg. Co. v. Russell & Co., 189 Fed. 61, 110 C. C. A. 625), was conclusive upon both parties, so far as that patent was concerned. W. W. Sly, the original patentee in both patents, died before this suit was begun.

Appellant contends: (a) The court erred in holding patent No. 703,313 invalid because of prior public use. (b) Even if patent No. 703,313 was invalid, the court erred in not retaining jurisdiction of the suit and directing an accounting as to infringement of patent No. 514,097.

Robert H. Parkinson, of Chicago, Ill., and John B. Hull, of Cleveland, Ohio, for appellant.

Howard G. Cook, of St. Louis, for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). Did the evidence establish prior public use of the apparatus covered by patent No. 703,313, so as to render it invalid? The conclusion reached by this court on this question makes it unnecessary for us to consider the other assignment of error.

All the testimony received on this trial was taken by deposition, and we must draw our own conclusions therefrom. The quantum of proof required to upset a patent on the ground of prior public use has many times been stated. The Barbed Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. It has been repeatedly decided that evidence of prior use sufficient to defeat a patent must be clear and satisfactory and convince the court beyond a reasonable doubt.

The patented article in question is referred to generally as a "barrel closure," and was used on mills made and sold by appellant and defendant. Its chief virtue lay in the fact that it was operated by one man. It had similar visual resemblance to a fastening device previously used by Sly, but it was a decided improvement in that one man was eliminated in its operation. Appellee's proof consisted of statements of numerous witnesses, who testified with a considerable degree of certainty that the barrel closure covered by the patent now under consideration was on a mill sold by Sly to the Gem City Stove Manufacturing Company on or about July 11, 1898, or nearly four years prior to Sly's application for a patent. Another witness testified to another public use. He stated that a mill installed by Sly in the Bridge & Beach Manufacturing Company, in April, 1898, contained the door-

fastening device covered by this patent. These two mills were admittedly installed in 1898.

The testimony of these witnesses, given from memory some 15 or 16 years after the mills were installed, is necessarily questionable. Conceding the fullest integrity to each witness, his recollection of details under such circumstances could not be certain and reliable. The substance of the testimony of each witness was that the door-fastening device had remained unchanged since the mill was installed. The additional statement was made that the door-fastening device in use at the time the witness testified was the same as when the mill was installed. These witnesses frankly admitted that they could not tell within a couple of years when the mill itself was installed, and appellee's chief witness admitted that he was not in the employ of the Gem City Stove Manufacturing Company for 8 of the 15 years that elapsed since the mill was installed, nor was it his duty to operate the mill at any time.

The uncertainty of human memory, the possibility of mistake, due to the similarity in appearance of the new and the old device, must cause grave doubt as to the accuracy of this testimony. Without questioning the integrity of any of the witnesses, it is doubtful whether the court would be justified in finding, upon this testimony, that there had been such prior use of the device covered by the patent in question as to call for the forfeiture of the patent.

There is, on the contrary, strong and persuasive evidence disputing this testimony. The tumbling mills sold by W. W. Sly, were built for him by Hess, Snyder & Co. during the years 1898 and part of 1899. In the latter part of 1899 his son, W. C. Sly, operating under the name of the Cleveland Repair & Manufacturing Company, began building them. This son was well acquainted with the business of his father, often looked after the correspondence, and his shop constituted the father's headquarters in 1900. The mills installed at the Gem City Stove Manufacturing Company and Bridge & Beach Company, were made by Hess, Snyder & Co., for this company made all of Sly's mills in 1898. In 1899 all of the castings used by the Hess, Snyder & Co. factory were sent to W. C. Sly, and all of these castings were for the old style of fastener. There were no castings sent by Hess, Snyder & Co. to W. C. Sly that would make the new style of fastener.

Still more significant is the fact that Hess, Snyder & Co. installed one of these mills in its own shop. After this suit was commenced, the Hess, Snyder & Co. plant was examined, and it was found that the Sly mill thus installed in that plant was provided with a door-fastening device of the old style. It is hardly conceivable that, if this company made mills that were provided with a door-fastening device which required the use of but one man, it would have equipped its own shop with the old device that called for two men to operate it. There is likewise much testimony tending to show that these fastening devices, in the very heavy and rough use to which they were constantly subjected, would not last 15 years, but would have worn out two or three times during that period.

Another fact, not in dispute, helps to explain how defendant's witnesses became confused. It appeared that Mr. Sly, after he perfected his second device, the one covered by the patent in suit, wrote his old customers and offered to furnish, without charge, this new door-fastening device. It is fair to assume from all of the evidence that the Gem City Stove Manufacturing Company mill was supplied with the later style of fastening device some years after the mill was installed, and that this change was made without the knowledge of the witnesses who testified for the defense. In addition to this, three witnesses testified positively that the new style of door-fastening device made its appearance in 1900. W. C. Sly testified concerning his father's experiments and efforts to perfect the door fastener, and that none were manufactured until after his firm, the Cleveland Repair & Manufacturing Company, began making the mills. This statement was corroborated by two of the employés of W. C. Sly.

Considering all of the evidence, we are convinced that it fails to establish prior public use with such certainty as the law requires to justify invalidating the patent in issue.

The jurisdiction of the court of equity having been properly invoked to dispose of the suit involving appellee's invasion of appellant's rights growing out of patent No. 703,313, it becomes unnecessary for us to consider appellant's further asserted right to demand a separate accounting for the infringement of patent No. 514,097, irrespective of its connection with the other patent. Certainly, with patent No. 703,-313 sustained, there can be no longer any question but plaintiff is also entitled in this suit to have an accounting for the infringements of patent No. 514,097, for both are conjointly employed in a unitary structure.

The decree is reversed, with direction to grant an injunction against future infringement of patent No. 703,313 and for an accounting for past infringements of this patent, and for an accounting for infringement of patent No. 514,097, occurring prior to its expiration.